UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
MOUSSA KONATE,                                                  Civil Action No.

                Plaintiff,

    -against-                                                   **COMPLAINT**

ALLIANCE SECURITY INC.,
RUSSEL CRUZ,
THOMAS CRUZ,                                                    Plaintiff Demands a
MALCOLM TERRENCE,                                               Trial By Jury
MICHAEL DEGIOVANNI,
ANTHONY QUINEOS, and
ISRAEL RIVERA,

                Defendants.
------------------------------------------------------------------------------X

Plaintiff, MOUSSA KONATE (hereinafter referred to as Plaintiff or "KONATE"), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, as and for his Complaint in this action against the Defendants, ALLIANCE SECURITY INC. (hereinafter referred to as "ALLIANCE"), RUSSEL CRUZ (hereinafter referred to as "RUSSEL"), THOMAS CRUZ (hereinafter referred to as "THOMAS"), MALCOLM TERRENCE (hereinafter referred to as "TERRENCE"), MICHAEL DEGIOVANNI (hereinafter referred to as "DEGIOVANNI"), ANTHONY QUINEOS (hereinafter referred to as "QUINEOS"), and ISRAEL RIVERA (hereinafter referred to as "RIVERA") (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. ("Title VII"), 42 U.S.C. §1981 ("1981"), New York State Human Rights Law; New York Executive Law, § 290, et seq. ("the Executive Law"); and the Administrative Code of the City of New York 8-107 et seq. ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated against by his employer on the basis of his race, color, and national origin, along with a hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and 1981. The Court also has jurisdiction pursuant to 29 U.S.C. § 2617; 28 U.S.C. §§ 1331, 1343, and pendent jurisdiction thereto.

4. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on April 16, 2019.

5. Plaintiff received a Notice of Right to Sue letter, dated November 20, 2019.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

**PARTIES**

8. Plaintiff KONATE is an individual African-American male who is a resident of the State of New York, Bronx County.

9. At all times material, Defendant ALLIANCE, is a Domestic Business Corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

10. At all times material, ALLIANCE is a New York based Building Maintenance and Security Services company.

11. At all times material, Defendant ALLIANCE employed Plaintiff as a Security Guard at 825 8th Avenue, New York, NY 10019.

12. At all times material, Defendant THOMAS was the Site Manager of Defendant ALLIANCE. Defendant THOMAS held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Defendant THOMAS held the power to hire and fire Plaintiff.

13. At all times material, Defendant TERRENCE was the Outside Supervisor at Defendant ALLIANCE. Defendant TERRENCE held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Defendant TERRENCE held the power to hire and fire Plaintiff.

14. At all times material, Defendant RUSSEL was the Lobby Supervisor at Defendant ALLIANCE. Defendant RUSSEL held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Defendant RUSSEL held the power to hire and fire Plaintiff.

15. At all times material, Defendant DEGIOVANNI was an Associate Account Executive at Defendant ALLIANCE. Defendant DEGIOVANNI held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. DEGIOVANNI held the power to hire and fire Plaintiff.

16. At all times material, Defendant QUINEOS was the Vice President of Security at Defendant ALLIANCE. Defendant QUINEOS held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. QUINEOS held the power to hire and fire Plaintiff.

17. At all times material Defendant RIVERA was an Account Manager at Defendant ALLIANCE. Defendant RIVERA held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. RIVERA held the power to hire and fire Plaintiff.

18. Upon information and belief, at all times relevant to this Complaint, Defendants meet the definition of an "employer" under all applicable state and local statutes.

19. At all times material, Defendant ALLIANCE had over fifteen (15) employees.

## FACTUAL ALLEGATIONS

20. Defendant ALLIANCE hired Plaintiff on or about October 24, 2016, as a Security Guard at 825 8th Avenue, New York, NY 10019.

21. Plaintiff is an hourly employee, Plaintiff's hourly rate was approximately fifteen (15) dollars per hour, and Plaintiff worked approximately eighty (80) hours per week.

22. Approximately two months after Plaintiff began working for Defendant ALLIANCE, Defendants began discriminating against Plaintiff on the basis of Plaintiff's race, color, and national origin.

23. At the start of Plaintiff's employment, Plaintiff was warned by a fellow female African-American co-worker of the discrimination he was bound to face as an African-American working for Defendant ALLIANCE. She informed Plaintiff that he should be careful around Defendant RUSSEL, a Spanish male, because RUSSEL hates African-Americans and wants to get rid of them all. She also stated that she had no choice but to switch from the day shift to the overnight shift so she would not work with RUSSEL, because he continuously made discriminatory comments towards her and African-Americans in general.

24. Another male African-American co-worker informed Plaintiff that he heard RUSSEL say to TERRENCE, "These people from Africa don't deserve to be working here with me. I want to push them to get them in trouble and then get rid of them all."

25. Approximately two months after Plaintiff began working for Defendant ALLIANCE, both Defendant RUSSEL and Defendant TERRENCE continuously heckled Plaintiff about his citizenship. Defendant RUSSEL told Plaintiff, "You're not even a legal citizen and you shouldn't even be allowed to work in the United States." These comments persisted throughout Plaintiff's employment. Defendants made these comments on the basis of Plaintiff's national origin, despite the fact that Plaintiff was and is a legal U.S. citizen.

26. Overwhelmed and tired of the comments about his national origin and citizenship, Plaintiff showed Defendants TERRENCE and RUSSEL his passport to prove that he was a legal citizen of the United States.

27. Plaintiff stated, "I am hard-working and deserve to be here just as much as anyone else."

28. Plaintiff subsequently went to Human Resources and complained of the discrimination he faced, but no action was taken.

29. On or around December 7, 2018, Plaintiff was using the computer at the 825 8th Avenue office to take his law school examination.

30. Plaintiff's co-workers and supervisors frequently used the computer for personal reasons.

31. Defendant CRUZ in particular frequently used the computer for personal reasons, including to watch pornography. Defendants were aware of this conduct but did not reprimand CRUZ.

32. Defendant RUSSEL began taking pictures of Plaintiff using the computer and telling Plaintiff he is not allowed to use the computer. Defendants TERRENCE and THOMAS were also present during this time.

33. Defendant RUSSEL then turned off the computer during Plaintiff's exam.

34. When other employees who were not African-American used the computer for personal reasons, they were not reprimanded.

35. Plaintiff complained to Defendant RUSSEL of race and color discrimination and inquired regarding this disparate treatment, stating, "I know you hate black people," and "I know the other employees use the computer for personal reasons, so why can't I?"

36. Subsequently, Defendants TERRENCE, RUSSEL, and THOMAS made a plethora of racially discriminatory comments relating to Africans, and specifically to Plaintiff KONATE.

37. By way of example, Defendant TERRENCE stated, "Do you think you're smart, because you're from Africa?" and "You stupid African people think you're smart."

38. Defendants TERRENCE, RUSSEL, and THOMAS also stated that "All Africans are booty scratchers" and Africans come from the "scum of the earth."

39. Defendants TERRENCE, RUSSEL, and THOMAS further said, "African people do not even have homes, they do not have toilettes, and they are low lives."

40. Defendants TERRENCE, RUSSEL, and TOM also stated, "Africans are not civilized people, and when they come to the United States, they try to be like Americans."

41. These racial comments continued through Plaintiff's employment. Defendants RUSSEL and TERRENCE told Plaintiff that they would "make sure to throw [your] dirty ass out of here."

42. After Defendants began making these comments to Plaintiff, Defendants TERRENCE, RUSSEL, and THOMAS went into THOMAS' office.

43. Immediately after, Defendant THOMAS called Plaintiff and told him to leave the building immediately.

44. When Plaintiff asked why he needed to leave the building, Defendant THOMAS said "Just leave. I don't want to hear anything from you, you African piece of shit."

45. Plaintiff begged Defendant THOMAS to give him a chance to explain himself, but Defendant THOMAS would neither allow him to do so, nor even tell Plaintiff the reason why he needed to leave the premises.

46. Plaintiff complied with Defendant THOMAS' request and left the building.

47. On Plaintiff's way home, Defendant DEGIOVANNI called Plaintiff and asked him to come to his office located at 318 West 39th Street, 8th Floor, New York, NY 10018. Plaintiff immediately went to Defendant DEGIOVANNI'S office.

48. When Plaintiff arrived, Defendant DEGIOVANNI brought Plaintiff into his office, where Defendants QUINEOS, and RIVERA were sitting.

49. Defendant DEGIOVANNI, QUINEOS, and RIVERA immediately began interrogating and intimidating Plaintiff.

50. They presented Plaintiff with an Employee Disciplinary Action form on the basis of his race, color, and national origin. They subsequently told Plaintiff that if he did not sign this form acknowledging what he had done wrong, he would be fired.

51. Plaintiff did not want to sign the document as he never had the chance to explain himself, and never found out what was said about him that prompted this write up. Further, Plaintiff did not want to sign the document because no other non-African-American employees who used

the computer for personal use had been required to sign an Employee Disciplinary Action form.

52. Plaintiff signed the document in fear of retaliation and because he could not afford to lose his job, but wrote "No comment" on the Employee Disciplinary Action form.

53. During this meeting with Defendant DEGIOVANNI, Plaintiff informed DEGIOVANNI of the discrimination he has been facing. Plaintiff told Defendants that he was being discriminated against due to his race, color, and national origin for quite some time now and that no one had taken any corrective action. Plaintiff further told DEGIOVANNI that numerous employees have said discriminatory things to him and treated him differently due to his race, color, and national origin. Plaintiff specifically mentioned Defendant TERRENCE'S discriminatory comments and conduct, amongst others.

54. Defendant DEGIOVANNI responded that he trusted Defendant TERRENCE'S word more than Plaintiff's since Defendant TERRENCE has been working there longer. Specifically, Defendant DEGIOVANNI said, "[TERRENCE] is one of my best supervisors. Whatever he says, I go with."

55. Defendant DEGIOVANNI refused to take any preventative or corrective action.

56. Thereafter, Defendant DEGIOVANNI instructed Plaintiff that going forward, he must report to a different building, much further from his home.

57. Two weeks after Defendant DEGIOVANNI moved Plaintiff to another building, Plaintiff received a phone call from a blocked number. When Plaintiff answered the phone, he asked, "Who am I speaking with?"

58. Defendants RUSSEL and TERRENCE responded, "It is Russel and Malcolm. We warned you that we would do everything we could to get you out of here and our plan succeeded. If

we don't like you, we will get rid of you. We run this place, you stupid African piece of shit." Defendants RUSSEL and TERRENCE then hung-up the phone.

59. Plaintiff filed a complaint with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") on April 16, 2019.

60. In or around May 2019, Defendants terminated Plaintiff shortly after he filed his complaint with the EEOC.

61. Defendants discriminated against and terminated Plaintiff on the basis of his race, color, and national origin, and because Plaintiff complained or opposed the unlawful conduct of Defendants related to the above protected classes.

62. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

63. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments including difficulty eating and sleeping.

64. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

65. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to his professional reputation.

66. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

67. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

68. Plaintiff claims alternatively (in the event Defendants Claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

69. Defendants' conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (AGAINST DEFENDANT ALLIANCE)

70. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

71. Title VII states in relevant part as follows:

    (a) Employer practices: It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

72. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant ALLIANCE. Defendant ALLIANCE discriminated against Plaintiff on the basis of his race, color, and national

origin, and creating a hostile work environment. Plaintiff complains of Defendant ALLIANCE's violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, or national origin.

73. Defendant ALLIANCE engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

74. Defendant ALLIANCE violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (AGAINST DEFENDANT ALLIANCE)

75. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

76. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

77. Defendant ALLIANCE engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

78. Defendant ALLIANCE violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER 42 U.S. CODE § 1981
(AGAINST ALL DEFENDANTS)**

79. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

80. 42 U.S. Code § 1981 - Equal rights under the law states provides:

    (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

    (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

81. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving African-American individuals of the equal rights described therein, in further violation of 42 U.S.C. §1981.

82. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of his contractual relationship which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

83. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

84. Defendants violated the above and Plaintiff suffered numerous damages as a result.

85. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

86. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

87. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

88. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race, color, and national origin, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on his membership in the aforementioned protected classes.

89. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

90. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FIFTH CAUSE OF ACTION
### FOR RETALIATION UNDER STATE LAW
### (AGAINST ALL DEFENDANTS)

91. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

92. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

93. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

94. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

95. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SIXTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER STATE LAW
### (AGAINST ALL DEFENDANTS)

96. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

97. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

98. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

99. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

100. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

101. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

102. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

103. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

104. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

105. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

106.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

107.   The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

108.   Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

109.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

110.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION FOR AIDING AND ABETTING
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

111.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

112.   The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

113. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

114. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

115. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

116. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

117. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

118. Defendants violated the section cited herein as set forth.

119. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

120. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

121. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        i. The employee or agent exercised managerial or supervisory responsibility; or

        ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        iii. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

122. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:   New York, New York
        February 18, 2020

                              Respectfully Submitted,
                              **DEREK SMITH LAW GROUP, PLLC.**
                              Attorneys for Plaintiff

                        BY:   /s/ Ishan Dave
                              Ishan Dave, Esq.
                              One Pennsylvania Plaza, 49th Floor
                              New York, New York 10119
                              (212) 587-0760